In the Matter of SIDNEY W. SALMON (Formerly Known as SIDNEY W. SOLOMON), an Attorney, Respondent.

First Department, October 28, 1932.

*Einar Chrystie,* for the petitioner.

*Sidney W. Salmon,* respondent in person.

FINCH, P. J. The respondent was admitted under the name of Sidney W. Solomon to practice as an attorney and counselor at law in the State of New York at a term of the Appellate Division of the Supreme Court, First Department, on April 19, 1915.

By the petition herein the respondent is charged with misconduct as an attorney at law in two instances, as follows:

*First.* That in January, 1928, the respondent stated to Henry Kohlman, who had formerly been his client, that he had a client, one Frank Laurino, who wanted to borrow the sum of $200 for a period of two months and that Laurino would pay a bonus of $25 for the loan and give as security therefor a chattel mortgage on his tailoring establishment at 562 Fifth avenue, borough of Manhattan, city of New York. Relying upon these representations, Kohlman gave the respondent $200 to be loaned to Laurino

on the terms stated. On January 31, 1928, Kohlman received from the respondent a receipt for the money, of which the following is a copy: " Received from Henry Kohlman the sum of $200 for the account of Frank Laurino, being understood that on 1st of February, 1928, a promissory note signed by the said Frank Laurino and endorsed by Sidney W. Salmon shall be delivered to the said Henry Kohlman together with a chattel mortgage covering all furniture, machinery and goods now in the tailoring establishment of the said Frank Laurino in Room 803 A, 562 5th Avenue, New York City. Said note is to be payable to Henry Kohlman in the sum of $225 and is to fall due on the 1st day of April, 1928.

" It is further understood that said Henry Kohlman shall have the right to demand payment on said note by giving ten (10) days notice of his desire to have same paid. If such note is given then the interest due on said note will be pro-rated."

Thereafter the respondent delivered to Henry Kohlman a promissory note for $225 payable April 1, 1928, of which the following is a copy:

" *February* 1, 1928.

" $225.

" April First after date I promise to pay to the order of Henry Kohlman Two Hundred and twenty-five......00/100 Dollars at Room 1202, 1482 Broadway, New York City. Value Received. No.......due Apr. 1, '28.

" (Sd.) FRANK LAURINO."

The note bore the indorsement of the respondent. The respondent did not deliver a chattel mortgage to Henry Kohlman as provided in the receipt. The signature on said note purporting to be that of Frank Laurino is not his signature. The note was not paid at maturity, but since that time the respondent has paid Kohlman the sum of about sixty-eight dollars on account thereof.

It is charged that the respondent, without the knowledge or authority of Laurino, represented to Kohlman that Laurino had signed the note and that he converted to his own use the $200 which he procured from Kohlman as above stated.

*Second.* It is charged that in May, 1927, one Madge Connolly retained the respondent to bring an action for divorce against her husband, William H. Connolly. It was agreed that the respondent's fee for services to be rendered in the matter was to be one hundred and fifty dollars, fifty dollars of which was to be paid immediately and the balance thereof after a decree of divorce had been entered. Mrs. Connolly paid respondent fifty dollars at the time of retainer and about six months thereafter she gave the

respondent a further sum of fifty dollars. The respondent caused a summons and complaint to be served on William H. Connolly but he failed and neglected to take any further steps in the matter. For almost one year thereafter the respondent from time to time, in response to inquiries made by Mrs. Connolly, falsely stated to her that her case had been placed upon the calendar of the court and would shortly be reached for a hearing. Mrs. Connolly finally caused an investigation to be made and discovered that her case had never been placed on the calendar. She then consulted another attorney, who obtained the papers in the case from the respondent. The respondent, however, has failed to return to Mrs. Connolly any part of the one hundred dollars which she paid him as aforesaid.

It is charged that the respondent, after being retained as above stated, deliberately neglected the interest of his client, falsely represented to her that her case was on the calendar and that it would be reached for trial shortly and converted to his own use the entire sum of one hundred dollars given to him by his client.

The respondent answered, and the matter was referred in turn to the Hon. Charles L. Guy and Hon. Alfred R. Page, official referees, both of whom died before rendering a report to this court.

The matter was sent to a third official referee for a hearing of testimony upon the charges and to report the same to this court with his opinion thereon.

The learned referee has duly reported, finding the respondent guilty as charged. The matter is now before this court upon motion of the petitioner for confirmation of the report of the referee.

With respect to the first charge, the respondent admits all the material facts set forth thereon, except that he claims he was authorized by Laurino to sign the note in question in his name and that the money received from Kohlman was actually used to pay the rent of Laurino, for which purpose it had been procured.

When Kohlman presented the note to Laurino for payment the latter declared his signature a forgery, and Laurino subsequently gave Kohlman and his attorney an affidavit reading as follows: " Frank Laurino, being duly sworn, deposes and says that he has inspected a certain promissory note bearing date February 1st, 1928, in the sum of $225 payable to Henry Kohlman, which said promissory note purports to have been signed by deponent as maker and endorsed by Sidney W. Salmon, said note purporting to be due April 1, 1928.

" That deponent's signature appearing on said note is not genuine, and that deponent's name on said note in so far as deponent is

concerned is forged and that deponent never signed said note personally nor did deponent ever authorize anyone to sign deponent's name to said note."

Laurino gave testimony and also an affidavit to the respondent contradictory of the statement in the aforesaid affidavit that he had not authorized the respondent to sign the note in his name. His explanation is that he was unable to read the affidavit given Kohlman and did not know its contents. This notwithstanding it appears Laurino had been in the United States for forty-three years and in business for himself for over twenty years. Laurino further testified that a payment of seventy-five dollars for rent was made by check of the respondent; that Laurino saw the check. The respondent first stated before the grievance committee of the Bar Association that he had deposited the two hundred dollars received from Kohlman in the Chase National Bank and thereafter drew checks to pay Laurino's rent and other expenses. Upon the production of an affidavit of an officer of the bank to the effect that the account of the respondent was then inactive with a balance of but one cent, the respondent testified that he might have been using his mother's account. Thereafter it was shown by petitioner that the bank balance of respondent's mother at that time was but three dollars and seventeen cents. Respondent then testified that his mother had two bank accounts. The petitioner then established that the second account was not opened until subsequent to the period in question. The respondent in his brief now admits that it has been shown he could not have paid the rent of Laurino either by his own check or that of his mother, but urges that the petitioner "failed to disprove the essential fact that the Miller concern was paid." Obviously whether or not the Miller concern was paid is quite immaterial to the defense of the respondent that it was paid by him or with the money received from Kohlman.

The aforesaid false testimony of the respondent, coupled with that of Laurino, discredits the endeavor of the latter to contradict his affidavit that he had not authorized the respondent to sign the note in his name.

The respondent also admits that when he wrote the name of Laurino as the supposed maker of the note he endeavored to imitate the signature of Laurino.

It appears, further, that judgments were outstanding against the respondent and that he was in straightened financial circumstances, none of which facts were disclosed to Kohlman when the respondent agreed to indorse the note given for the $200 obtained from Kohlman.

Upon the record, it appears clearly that the finding of the referee upon this charge is sustained.

With respect to the second charge, the contention of the respondent now is that he delayed placing the cause upon the calendar until he had been afforded an interview with the principal witness of his client and that in the meantime an additional cost was imposed, which the respondent informed his client should be borne by her, whereupon she decided to employ other counsel. The counsel substituted for the respondent testified that the latter advised him that he had failed to place the case upon the calendar because he was " broke." Upon the hearing the respondent testified he failed to proceed with the case because his client refused to furnish the additional calendar fee above referred to. In this connection, however, it appears that Mrs. Connolly had made a voluntary payment of an additional fifty dollars to the respondent, although the agreement provided for an initial payment of fifty dollars and balance of one hundred dollars when the divorce was obtained. It is unreasonable to suppose that Mrs. Connolly would prefer to pay another attorney a full fee rather than pay the comparatively small additional fee involved. Upon the hearing the respondent testified he did not think he ever told Mrs. Connolly that he did not intend to put the case on the calendar until he had interviewed her chief witness nor is there any testimony that he ever told her that the case would not be put upon the calendar until the payment of the additional calendar fee. Upon the other hand, the testimony of Mrs. Connolly is clear and convincing. She testified that after giving him fifty dollars as retainer, " I waited six months, eight months — I cannot tell you just the number of months — and he kept telling me it was on the calendar and it would be called every Friday. Every Friday was the following Friday. I gave him another fifty dollars without his asking for it, thinking it would help the case along, and he kept telling me that the whole year — telling me it was coming up every Friday."

The finding of the learned referee with respect to this charge also is sustained by the record.

The respondent should be disbarred.

MERRELL, McAVOY, MARTIN and TOWNLEY, JJ., concur.

Respondent disbarred.